Good morning. May it please the Court, John Pang on behalf of Petitioner Fernando Cortes-Martinez. Mr. Cortes-Martinez merits an evidentiary hearing to resolve the open evidentiary disputes concerning DHS's proof of alienage. DHS bore a clear and convincing burden of establishing deficient I-213s. The original I-213 was internally inconsistent because it included and intermixed two names, Cortes-Martinez and Cruz Aguilar. The IJ properly recognized this inconsistency and terminated removal proceedings. DHS responded by simply reinitiating another set of removal proceedings before the same IJ, supporting it in large part with a third I-213 that never explained the basis for the original misidentification. But what does the mistake in the original one have to do with what was finally submitted? There was something wrong? Too bad. They then submitted something else. What does the earlier mistake, how does that affect you at all? Because I-213s are premised on a presumption of reliability, this Court marked that out in Vera Punin. And so when there are questions about the reliability of a certain I-213, this Court has reminded that the IJ should inquire further, including potentially calling the officer who prepared the form to testify about what happened that caused the error in the original. And so once there was the original I-213 that was deficient and the IJ recognized it, terminating proceedings in the first instance, the IJ should have inquired about what happened to account for the changes in the third I-213. DHS could not simply sweep this evidentiary dispute under the rug and call it a day. The problem with the I-213s, too, is on the... Setting aside, I guess, the history of the I-213s, is there anything in the current form, I-213, that's inaccurate? Not that Mr. Cortez Martinez argued below, but without resolving the core evidentiary dispute of whether the information was properly gathered and whether it could supply a basis for clear and convincing evidence of alienage. So you have to win on all four pieces of evidence to keep them out? I think we only have to win on one, Your Honor, and that's because the BIA and the IJ made a collective finding. The BIA said it was upholding the IJ, saying the IJ properly found that DHS satisfied its clear and convincing burden of proof. It then goes through each of the different pieces of evidence, and each individual piece satisfies DHS's burden. And so because this court, as reminded in Ojo, citing the Chenery Doctrine, can only affirm the BIA based on what the BIA itself reasons, I think this would have to go down if this court finds there is any open dispute on any of the individual pieces of evidence. Turning to the sworn statement, perhaps, that was the other piece of evidence that DHS said is what supplies the clear and convincing burden. And I think more analysis needed to be done about whether there's at least the basis for Mr. Cortez Martinez to establish a case that this, the statements, were obtained through corrosion or by duress. And that's flowing through the affidavit that Mr. Cortez Martinez supplied to the IJ. He said that he was brought to this interaction in a New York State prison, that he was done so under the threat of correctionary penalties, that he felt he was not, he was obligated to... Can you be specific about what part of the prison interview was that constituted the violation of the Fourth Amendment? One, perhaps, quibble, but yes. I don't think this is a pure violation of the Fourth Amendment as some of the previous cases might have addressed. But this flows out of just whether the interaction and the information was obtained through coercion or duress. The agency has recognized that this actually touches on voluntary statements. And so I think it's, one, the corrections officer putting Mr. Cortez Martinez in a position where he had to attend or else he would face, he would lose liberties inside prison. And that included, perhaps, losing good time credits, being placed into solitary or a number of other measures that are assessed to incarcerated individuals if they do not honor the order or obey the orders of a corrections officer. Second, he was put into an interview where the DHS officer ultimately did not provide any advisals. And I think that the DHS officer was required to do through regulation. 8 CFR 287.8 says DHS officers can't use any amount of coercion or duress to obtain statements through an immigration interview. Mr. Cortez Martinez averred that the officer did not provide any of the advisals that we see at the top of the record of the sworn statement, including that he had the right to be represented by counsel of his own, that he could provide for his own counsel, that the statements could be used against him in a subsequent administrative proceeding, and that anything that was involved in that interaction could have consequences. And because the officer was required to provide these advisals and failed to do so, I think there's at least a basis for a finding of coercion or duress. And that question should go back to the immigration judge to assess in the first instance. Is the evidence of coercion and so on anywhere near that that we've found in other cases to be sufficient to throw the thing out? I mean, I don't mean there wasn't some, but I'm trying to look at the other cases. And in the other cases, the behavior, when we have thrown it out, the behavior was mighty fierce, much more than here. I take that, Your Honor. I think the closest are Zuniga, Paris, in which officers, CBP officers, went as part of an arrest warrant and then inquired further into immigration statuses. It's Kotzeheim, where this Court set out different factors for when something is obtained through coercion or duress. It's also Singh v. Mukasey about a CBP interview in which officers did not let Mr. Singh feel at liberty that he could leave and that his answers could be used against him. And then finally, I think this is the government citation to Raja v. Mukasey, which also references CFR 287.8 about coercion and duress. I think at minimum, the IJ needed to do slightly more. It was not enough to simply say because Mr. Cortez Martinez was held in New York State Prison that he could be placed under no amount of coercion or duress. I think that statement goes too far based on how the Supreme Court has analyzed these types of settings. In House v. Field and Maryland v. Schatzer, the Supreme Court laid out a more nuanced line. If someone incarcerated is taken away from general population and, as Mr. Cortez Martinez averred, that he felt that he was not able to disobey the orders, then I think there is at least a basis for a finding of coercion. Thank you, counsel. Thank you for just a few minutes for rebuttal. Your Honor, may it please the Court, Linda Dove for the respondent, United States Attorney General. Here, DHS set forth four separate pieces of evidence, any one of which, standing alone, is sufficient to establish Petitioner's alienage by clear and convincing evidence. The agency properly denied Petitioner's motion to terminate and suppress the evidence because the evidence is fundamentally fair and probative, and his suppression affidavit, even taken as true, does not suffice to show either an egregious violation or a violation that undermines the probity of the evidence. It's important to note, from the outset, Petitioner does not claim that any information provided by the documents provided by DHS was either incorrect or inaccurate. This is including the uniform sentence and commitment, the pre-sentence investigation report, the RAPI, which is the report of persons institutionalized, the record of sworn statement, as well as the I-213 dated January 22nd, 2024. Petitioner's contention that there was an error in the original I-213 does not render the current I-213 inadmissible or undermine its probity. As set forth in the I-213, a new, I guess, research and review of the case was conducted, at which time the immigration officer and examining officer reviewed the facts and confirmed that Petitioner indicated that he was an alien born in Pueblo, Mexico in 2001, confirmed the identity of his parents, his attendance in Long Island High School, and indicated that his immigration status was uncertain and unclear. I understand his argument to be that the kind of irregularities with the initial form, I-213, somehow undermined the presumption of reliability of the contents of the document. Well, in regards to the original, as set forth in, I think, Petitioner's suppression brief, he indicated that the immigration noted that Petitioner had solely submitted the uniform sentence in commitment in support of the I-213. Here, DHS— Are there any cases in which a previous I-213 has been bad, has required to do more in setting up a second? Do we have any cases linking the two? Not that I am aware of, Your Honors, but here, again, there's no indication that the original NTA—Petitioner doesn't challenge the NTA, doesn't claim it's deficient, and there's no indication that the original NTA was dismissed with prejudice, through renewal, or that was even adjudicated on the merits. Accordingly, there's nothing precluding that. Here, regarding to the I-213, DHS submitted a number of documents corroborating and supporting the facts therein, and again, Petitioner does not claim that any of the information is inaccurate. And here, it was supported by the pre-sentence investigation report, where Petitioner was interviewed by a probationary officer and, again, reiterated that he was born in Pueblo, Mexico, in 2001, that he was uncertain of his immigration status, and that he had entered the country around roughly the age of six. And this corroborates—amply corroborates—the facts that forth in the I-213. Notwithstanding that, Petitioner, again, repeated those same facts to an immigration official in the record of sworn statement, a sworn statement which he said that signed an affidavit, indicating that he had read the questions as well as the answers and that the facts were true to the best of his ability. In light of the ample support provided by DHS, the 2024 I-213 doesn't have anything undermining it. Or any question as opposed to the original one. So current Petitioner's claims and contentions simply do not set forth an egregious violation, much less any violation undermining the reliability of the current I-213. Do you want to address your friend's argument about the interview being compulsory and the advisals he was not given in accordance with prison policies? Regarding the record of sworn statement, Petitioner, as the Supreme Court has noted, there is a difference between a person who is at liberty and being questioned and pulled aside versus someone who is already convicted and incarcerated and lives in prison. And that's the circumstance that we have here. Petitioner was already incarcerated, so he was not free to go as someone who would be at liberty. Yes, but somebody in jail can also be coerced if what is done is improper. And there are allegations that he was threatened with all sorts of losses, privileges, and even suggestions that he might have been beaten. So the fact that he was in jail doesn't mean he couldn't be coerced in other ways, doesn't it? Well, that's actually a good point, Your Honor. His suppression affidavit doesn't actually allege that either the correctional officer or the immigration officer had lodged any threats against him. There's no claim of affirmative misconduct or any misinformation by either the correctional officer or the immigration officer. Petitioner states in his affidavit that he perceived these threats, that he felt it, primarily due to the fact that he is a person who's been convicted and incarcerated and lives in prison and is subject to the prison's rules. He did not claim that the correctional officer had made any threats of sanctions against him for failing to answer, that either officer had commanded that he answer any of these questions. Under his affidavit, was there any independent evidence that he would have lost privileges if he had refused to go for the interview? Petitioners, I believe counsel had cited a, you know, a correctional facility rule stating that, you know, that they are required to follow the rules of the correctional facility. But aside from that, there's no indication that he was, you know, again, any officer had engaged in any misconduct, provided any misinformation. Petitioner never indicated that he had even informed either officer that he did not want to attend or did not want to answer the questions, and he much less does not claim that either one said that he couldn't refuse to answer. And that's an important distinguisher here. There's no indication that anyone had provided any misinformation to him, and this is based on his perceptions. Accordingly, he has not shown that he was coerced or threatened or placed under duress. As regarding to the advisals provided, the regulations do not require vials until a petitioner is placed in formal removal proceedings. At the time of the interview, petitioner was not under arrest by DHS, and the NTA had not yet been issued. Accordingly, no advisals were required, and there's no regulatory violation. And further note to the extent that there are advisals on the form, it's a standard form provided by DHS in the context of when an alien is either interviewed or when he is being arrested. In this instance, petitioner was not yet arrested by DHS and not detained by DHS and not, again, not in formal removal proceedings. So there is no error by the immigration officer for failing to provide the advisals on the form where the form indicates that such advisals could be provided in the context of either an arrest or when an interview. And here, petitioner was simply being interviewed. Are there any additional questions? Well, in light of the foregoing, DHS has met its burden by clearing convincing evidence. Again, any one of which of the evidence is sufficient to sustain that it's burden of proof. Accordingly, request that the court deny the petition for review, and the government rest on its grief. Thank you, counsel. We'll hear rebuttal. Counselors, I'd like to make three points on rebuttal. First, about the regulation and what it requires. So we're looking at 8 CFR 287.3C. The government says that those are only required once formal MTA has been filed and removal proceedings started. But the language used in 287.3C says the officer will advise the person that any statement made may be used against him or her in a subsequent proceeding. It feels odd to say the officer would inquire about someone's alienage but not provide that statement before starting the proceeding that's meant to be premised on someone being a foreign national. Second, I'd like to clarify the standards about the suppression at issue. There are two strands of suppression. One is the egregious violation standard discussed in cases like Milan-Hernandez. The other comes out of this Court's case in Feltzerich v. INS, referencing the BIA's own precedent, saying even for statements obtained not through an egregious violation, coercion or duress might knock out the statement because it was not voluntarily made. And we cite the matter of Gomez-Gomez for the best source of that in our brief. Finally, I'd like to go talk about the no-threat statement that my friend made. And that's what the IJ and the agency ultimately said, that there could be no amount of threat induced here for Mr. Cortez-Martinez. I think that provides too myopic of a view in this early stage. The question is whether there's at least a basis for finding coercion or duress. And I think a lot of the questions or the discussion about what actually Mr. Cortez-Martinez felt, whether those were based on genuine understanding of what happens in a correctional facility, are exactly the types of questions that could be answered at the evidentiary hearing. Mr. Cortez-Martinez could provide better testimony to establish a prima facie case, and he could call on witnesses and supply additional evidence to show that he was not at liberty to disobey the correctness officer. Thank you very much.